COPPELL *et al.* *v.* PHILLIPSON.

*(Supreme Court, General Term, First Department. July 18, 1890.)*

NEGOTIABLE INSTRUMENTS—BONA FIDE HOLDER.

C. & Co., doing business in Mexico, were accustomed to draw on defendant in New York, who would accept their drafts, and credit them with goods they shipped to him from time to time. These drafts would not be drawn against any particular shipment. In a letter notifying defendant of the shipment of a large quantity of coffee C. & Co. mentioned that they had drawn on him in favor of a Mexican bank, which would cash the draft on receiving telegraphic advice of acceptance. The bank indorsed the draft generally to plaintiffs, its New York correspondents, and, defendant having accepted it without objection, plaintiffs immediately telegraphed to the bank, which thereupon paid C. & Co. the face value of the draft, and plaintiffs credited the bank with the amount of it. The course of dealing between the bank and plaintiffs was for the former to make remittances from time to time to plaintiffs, and then draw on them. *Held,* that plaintiffs were *bona fide* holders of the draft.

Appeal from circuit court, New York county.

Action by George Coppell and others against Paul Phillipson to recover on an acceptance of defendant. Plaintiffs are bankers under the firm name of Maitland, Phelps & Co. Defendant, in 1888, was engaged in business in New York under the name of P. Phillipson & Co. He had had for some time previous extensive dealings with a firm in Vera Cruz, Mexico, known as Caraza & Co. The course of business between them was that Caraza & Co. would draw on P. Phillipson & Co., and the defendant would accept these drafts, keeping an open running account with Caraza & Co., in which he credited them with goods which they shipped to him from time to time. The drafts do not seem to have been drawn against any particular shipment, nor were the bills of lading or invoices annexed to the drafts. On October 9, 1888, Caraza & Co. notified the defendant (in a letter relating also to many other transactions) that they had procured some coffee he had telegraphed for, and would ship it, weather permitting, by the steamer Saratoga; and they inclosed invoices giving the weight and price of the coffee, and charging defendant $25,583.81 in all for these goods. In another part of the letter, and without any reference to the shipment of coffee, Caraza & Co. notified the defendant that they had

drawn on him for $7,000 in favor of the National Bank of Mexico, in Vera Cruz. They added that the bank had taken this draft, and would cash it on receiving telegraphic advice of acceptance. On October 11, 1888, Caraza telegraphed: "Saratoga takes 400 bags only; cause, bad weather." On October 16, 1888, they telegraphed again: "400, Saratoga, your consignment, are shipping rest in Spanish to the same address." And on October 19, 1888, they telegraphed: "On account of bad weather cannot ship rest, will do so in next Spanish." On the same day, October 19, 1888, the defendant accepted the draft in suit. The defendant says that the rest of the coffee was not shipped, but there is no evidence whatever to show the reason of non-shipment. The draft, as above stated, was drawn on the defendant in favor of the Vera Cruz branch of the National Bank of Mexico. It is dated October 9, 1888. The bank on the same day indorsed the draft generally to the plaintiffs, who were its correspondents in New York. The course of business between the National Bank and the plaintiffs was that the bank made remittances from time to time to the plaintiffs, and drew on them. It was proved that the course of business corresponded to the usual course of business between a bank and its customers. The draft in suit was duly accepted by the defendant on October 9, 1888, without objection, and without notifying plaintiffs of the telegrams from Caraza & Co. The plaintiffs immediately telegraphed to the National Bank that the draft was accepted, and the National Bank on the next day, October 20, 1888, in reliance upon the telegram, cashed the draft by paying Caraza & Co. its face and 34 per cent. premium, in Mexican currency. The draft, by its terms, became due on November 12, 1888. It was not paid, and this action was begun in December, 1888. The complaint is in the usual form. The answer puts in issue the copartnership of the plaintiffs and the indorsement of the draft to them. It further sets up that the draft was not accepted for value; that the plaintiffs are not the real parties in interest, and the draft, if indorsed to them at all, was only indorsed for collection, and not otherwise; that the draft was neither drawn, indorsed, nor accepted for value, and the consideration for acceptance wholly failed, inasmuch as Caraza & Co. had induced the defendant to accept the draft by false and fraudulent statements in regard to the shipment of certain coffee. Upon the trial the facts above set forth were proved, when defendant moved to dismiss the complaint on the ground that the plaintiffs were not the real parties in interest, which was denied. Defendant then asked that judgment be directed in his favor, on the ground that the drafts were procured by fraudulent representations, and plaintiffs were not holders for value, which was denied. Defendant then asked to go to the jury upon the question of fraud and want of consideration, which was also denied. The learned judge directed a verdict for the plaintiffs, and the defendant excepted to all these rulings. Judgment was entered for $7,850.84, and defendant appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Lewis Sanders*, for appellant.   *G. L. Rives*, for respondents.

BRADY, J. The draft in question was drawn by Caraza & Co. upon the faith of shipments of coffee which were to be made, consigned to the defendant, by whom it was accepted. The understanding, as we have seen, between Caraza & Co. and the bank at Vera Cruz, was to cash their draft on receiving telegraphic advice of its acceptance by the defendant. It does not appear that the draft in controversy was drawn against any particular shipment, but prior to acceptance the defendant was advised of the acceptance to be made. This mode of doing business was one agreed upon between Caraza & Co., as we have seen. The course of business between the bank and the plaintiffs was for the former to make remittances from time to time to the plaintiffs, and to draw against them. When the draft of Caraza & Co. was drawn payable to their order, it was indorsed to the plaintiffs, who are the bank's cor-

respondents in this city. When it was accepted by the defendant without objection, and without notifying the plaintiffs of aught to the contrary, the plaintiffs telegraphed the bank that the draft was accepted, and the bank on the next day, October 20th, in reliance upon the telegram, cashed the draft by paying Caraza & Co. its face and 34 per cent. premium in Mexican currency, as the defendant was advised it would on receiving notice of such acceptance. The consideration of the draft is thus perfectly shown. The bank paid the amount of it upon the faith of the defendant's acceptance, and the plaintiffs credited the bank with the amount of it in the usual course of business between them, and thus the consideration passed from the bank to Caraza & Co. and from the plaintiffs to the bank. A statement of the facts of this case would seem to make it entirely unnecessary to add anything to establish the propriety of the judgment rendered in favor of the plaintiffs. These facts destroy at once the attitude of the defendant that the plaintiffs are not owners in good faith of the draft. If the payee or any intermediate holder has paid value for the instrument sought to be enforced, that consideration will support the plaintiffs' title. 1 Daniel, Neg. Inst. 174; 2 Rand. Com. Paper, § 653. The other defense of fraud, the plaintiffs being the owners of the draft for value without notice of any infirmity, is not entitled, under the circumstances to any consideration. But it may be said with regard to it there is no evidence whatever establishing any such fraud as would affect the relations between the plaintiffs and the defendant, or the bank and the defendant. The omission to keep a promise to send goods is not fraud *per se*. We see no reason for interfering with this judgment, and it should be affirmed, with costs. All concur.